## Coppock *v.* City of Knoxville.

### (*Knoxville,* September Term, 1940.)

Opinion filed February 3, 1941.

Joe C. Thomason, of Knoxville, for plaintiff in error.

W. B. Lockwood, of Knoxville, for defendant in error.

Mr. Justice Chambliss delivered the opinion of the Court.

Coppock had been for many years employed in the Service Department of the City as a "labor foreman."

He was laid off February 8, 1938. A new budget under a new Commissioner went into effect for the year 1938, reduced by more than $100,000 in total amount. This necessitated the layoff of a great many employees. Coppock brought this suit seven months later to recover wages which he would have received if not laid off, upon the theory that he had been discharged in violation of provisions of the Civil Service amendment to the charter, which provided that employees within its provisions could not be discharged except (1) for cause, after a hearing, and (2) for economy causes; that in his case seniority was disregarded which was required to be observed, the employees in each class being required by law to be laid off in reverse order of their employment, that is, the last employed to be the first laid off. Coppock had been with the City since 1924 and he claims that a number of other men who had come in since were retained when he was laid off, or were employed after he was laid off. (The charter was amended in March, 1939, so as to eliminate labor foremen from the Civil Service group, and Coppock seeks here to recover only up to that date.) The trial judge (Carlock) sitting without a jury heard the case on oral testimony and dismissed the suit, without setting out in the record his reasons. The Court of Appeals reversed, opinion by Judge Ailor, holding that he was entitled to recover because wrongfully discharged, and remanded the case for further hearing as to the amount to which he was entitled.

We granted *certiorari* and argument has been heard.

The pertinent charter provision is as follows:

"Provided, however, that if in making up the budget the Director in charge of any department of the City, the City Manager, and the Council, or either of them, ascertain that there is a surplusage of employees in any

section or position, the Director shall reduce the number of employees in each Section or position, taking from the employees of the Section or position those last appointed from the bottom upward, until the reduction reaches the point that is satisfactory to the director.''

It appears that the laying off and employing in question here was done by Mr. Brady, who had for many years served as Superintendent of Streets, in charge of the construction and maintenance of streets and sewers, bridges and sidewalks, etc. He is conceded to have been a competent and experienced man and to have acted without conscious bias or prejudice toward Mr. Coppock, who had worked under him for years.

The point is made that the charter provision quoted above contemplates that changes in the personnel of employees shall be made by the Director of the department, personally, and that this change affecting Mr. Coppock was not so made. But Mr. Brady was the Superintendent directly in charge, and we think the intent of this provision was thus complied with. He was acting for the departmental Director and with and by his authority.

We are impressed that Coppock was laid off because of the necessary reduction in the number of employees and that the apparent discrimination against him was because others who were retained or later employed were qualified to act in the specific matters mentioned, whereas he was not. Coppock was what was known as a grade and ditch foreman. He had no experience or skill, for example, in concrete construction or bridge work, and that appears to be why other men were retained and he was not. The proof shows that there was practically no work done along the particular lines with

which he had had experience and was familiar, etc., after he was laid off.

■■ While the charter provisions relied on protect labor foremen, and Coppock was a labor foreman, we think it only reasonable to construe the seniority requirement as having some degree of elasticity, and as permitting to the Superintendent some power of selection, based on comparative competency and capacity for performing specific duties, otherwise the law would be incapable of reasonable enforcement. We think the Superintendent was vested with some discretion in classifying the labor foremen. He could not, of course, work as a concrete mixer foreman, or as a foreman over bridge constuction, a mere street grading foreman, unless the proof showed that the particular man was qualified by experience and training to do such work.

■ Now this case comes down to the question whether or not, under the proof, others were retained, or employed, in this department of the City government, after Coppock had been laid off, to perform services which he could have competently performed. The trial judge, who saw and heard the witnesses, found that they were not so retained and employed and dismissed the suit. The Court of Appeals holds otherwise.

We have examined the record and agree with the trial judge. In the first place, as already stated, the record not only indicates no prejudice toward Coppock on the part of the Superintendent, but, on the contrary, friendliness and a disposition to use his services where practicable. The Superintendent was certainly best qualified to decide when he could and when he could not use Mr. Coppock as foreman. It is clear that the street and sewer work was classified, and that men qualified in some lines were not in others. Also, that Mr. Coppock's experience

and capacity was in a limited or restricted field, that of "a grading and ditching forman," and it was proven that since Coppock had left (during the period covered by this suit), no grade work had been done and that trucks used in such work had been "sitting up in the garage." Superintendent Brady testified that no grade foreman was employed after Mr. Coppock was laid off.

A number of men were named as having been either retained or employed after he was laid off in disregard of the seniority rule. We have examined the testimony as to these. We cannot undertake to discuss separately the facts as to all of the men of whom Mr. Coppock complained as having been retained, or employed, in violation of his seniority rights, but we mention a few by way of illustration. J. S. Ryan was one of these. The proof was that Ryan was an "asphalt foreman," doing work which Coppock had not done and with which he was not familar, or qualified to do. Ryan was retained only until he completed a job he was working on and then let out, and not afterwards employed.

As to Frank Ferguson, Coppock testified himself that he was a "bridge foreman," work of a type that he had never done. Mr. Brady testified that Coppock was not qualified to perform this class of work.

W. S. King was another man named, but the proof was that King was put back to work, after having been off some time, mixing asphalt and doing patching with it, and Mr. Coppock was not qualified to mix asphalt. Plaintiff admitted that he was "not an asphalt man."

Bill Harrolson was put on after Coppock was laid off, but the proof was that he operated an incinerator for disposal of garbage, and that work called for services of one with knowledge of boilers and machinery, which Coppock did not have.

Bill Edington was shown to have worked in building concrete sidewalks and walls, a class of work that Mr. Coppock was not qualified to do. This was true of several others who were named by Mr. Coppock.

Two men, J. H. Young and George Pratt, were brought in after Coppock was let out, but both as truck drivers, a class of work not within the Civil Service provisions. Obviously their employment in this work could not be complained of by Coppock. Moreover, it appears that Mr. Brady discussed with Mr. Coppock putting him to work driving a truck, and Mr. Coppock told him that he could not "drive a truck on account of his leg."

It will be recalled that the pertinent section of the Civil Service Code already quoted provides that where, "there is a surplusage of employees *in any section or position* the Director shall reduce the number of employees *in such section or position*, taking from *the section or position* those last appointed," etc. One thus let out of a particular section of work, or position, cannot complain of the retention of another in a separate and distinct position. This is all that appears to have been done in this case.

We have no disposition to encourage disregard of these commendable Civil Service provisions, but when it is clear that reductions in the number of employees are required in the interest of economy in governmental expenditures, so much needed in these days of wasteful public expenditures, and when good faith and fairness of purpose is shown, we think proof of infractions of the seniority rules must be clearly shown before a recovery is allowed for alleged violations.

The decree of the Court of Appeals must be reversed and the suit dismissed.